UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC JOHNSTON, | No. C 09-267 MHP (pr) |
| Petitioner, | **ORDER OF DISMISSAL** |
| v. | |
| ROBERT L. AYERS, warden, | |
| Respondent. | |

### INTRODUCTION

Eric Johnston, an inmate at San Quentin State Prison, filed this pro se action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge a 2007 parole denial. His petition is now before the court for review pursuant to 28 U.S.C. §2243 and Rule 4 of the Rules Governing Section 2254 Cases.

### DISCUSSION

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A district court considering an application for a writ of habeas corpus shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. Summary dismissal is appropriate only where the allegations in the petition are vague or conclusory, palpably incredible, or patently frivolous or false. See Hendricks v. Vasquez, 908 F.2d 490, 491 (9th Cir. 1990).

Johnston states in his petition that he was sentenced in 1998 to 15 years to life in prison upon a conviction of second degree murder.  His petition does not challenge his conviction but instead challenges a May 3, 2007 decision by the Board of Parole Hearings ("BPH") to deny parole.

Johnston does not make the common argument of parole applicants that the evidence was insufficient to support the BPH's decision, and instead contends that the BPH violated his constitutional rights by failing to fix a term or set a release date for him.  In claim 1, he alleges that the BPH violated his due process rights by not fulfilling its mandatory duty "to parole petitioner between his Minimum DSL release date of May 7, 2005, and his Maximum DSL release date of August 28, 2011."  Petition, p. 8.  In claim 2, he contends that the BPH has violated his Eighth Amendment rights in refusing to parole him because the State will soon lose jurisdiction to keep him in prison.  In claim 3, he contends that his rights to due process and equal protection were violated because "[e]qual protection requires that petitioner[']s status as [an] ISL prisoner with a confirmed DSL release date that is soon to expire enjoy the same protection as any other person of similar classification/status."  Id. at 8-8a.

All of his claims depend on the premise that he has or is entitled to a DSL release date – a premise that is simply wrong.  Johnston's petition urges that the parole authority (which was known as the Adult Authority in the 1970s, and later as the Board of Prison Terms and currently as the Board of Parole Hearings) has a specific obligation to set a term of years or announce his release date so that he will know when he can expect to be released from prison.  However, this claimed right to have his term of years and release date set stems from his incorrect interpretation of the California Supreme Court's decision in In re. Rodriguez, 14 Cal. 3d 639 (Cal. 1975), and related cases.  To understand why the right does not exist, it is necessary to understand some of the history of California's sentencing and parole laws.

California used an indeterminate sentencing law ("ISL") until 1977 and has used a determinate sentencing law ("DSL") since then.  Under the ISL, the trial court did not set a

1 term of years but instead sentenced the defendant to a usually wide range of years as
2 provided by law, such as "1 year to life" and the parole authority then would determine the
3 length of the term each defendant actually would serve. When a person was convicted of an
4 offense for which imprisonment was prescribed by law, the court imposing the sentence did
5 not fix the term or duration of the period of imprisonment. See Rodriguez, 14 Cal.3d at 643
6 n.4 (quoting former Cal. Penal Code § 1168). Instead, the Adult Authority was authorized to
7 determine the length of time a person should remain in prison within the outer limits of the
8 indeterminate sentence imposed. See id. at 645 n.11 (quoting former Cal. Penal Code §
9 3020). The Adult Authority also was authorized to allow prisoners to go upon parole. See
10 id. at 645 (quoting former Cal. Penal Code § 3040). The matter of parole was discretionary,
11 as the Adult Authority was permitted to determine parole "at any time after the actual
12 commencement of such imprisonment." Id. at 646 (quoting former Cal. Penal Code § 3041).
13 In 1977, the DSL replaced the ISL. The DSL prescribed sentences of a set duration for each
14 crime. However, the sentences for most murders (and some kidnappings) remained
15 indeterminate. The foregoing brief history of the ISL and the DSL provides necessary
16 background to the state court cases on the term-setting duties of the parole authority.

17 Under California law, a prisoner whose maximum term may be disproportionate to his
18 individual culpability has a right to have his term set at a number of years that is
19 proportionate to his offense so as to avoid the imposition of cruel and unusual punishment.
20 See generally Rodriguez, 14 Cal. 3d at 651-52. The question in Rodriguez was whether the
21 prisoner's indeterminate life sentence amounted to unconstitutional cruel and unusual
22 punishment. Rodriguez had served 22 years of an indeterminate 1-year-to-life sentence for
23 lewd conduct on a child (see Cal. Penal Code § 288) and claimed that his life maximum
24 sentence was disproportionate to the offense and thus violated both the state and federal
25 constitutional prohibitions on cruel and unusual punishment. The court noted that a
26 conviction under Penal Code § 288 could be based on a great range of conduct, some of
27 which was extremely serious and some of which was far less serious; thus, § 288
28

3

"encompassse[d] conduct for which life might be a permissible punishment in some cases but excessive in others." 14 Cal. 3d at 647. In order to analyze Rodriguez's cruel and unusual punishment claim, it was necessary to look beyond the facial validity of § 288 and consider the particular sentence Rodriguez received for his violation of § 288. See 14 Cal. 3d at 648-49. To do so, a term of years had to be set for the court to determine whether that term violated the prohibition on cruel and unusual punishment for that prisoner's crime. Significantly, if a term was not set for a prisoner, the term would be presumed to be the statutory maximum. See Rodriguez, 14 Cal. 3d at 654 n.18.

      Less than two months before Rodriguez, the California Supreme Court stated that "a defendant under an indeterminate sentence has no vested right to have his sentence fixed at the term first prescribed by the Adult Authority or any other period less than the maximum sentence provided by statute. . . . It has uniformly been held that the indeterminate sentence is in legal effect a sentence for the maximum term, . . . subject only to the ameliorative power of the Adult Authority to set a lesser term. . . . . But these propositions, valid in the abstract, must be qualified when the maximum term is challenged as disproportionate. In such a case a defendant has an undeniable vested right in insuring that his term be fixed proportionately to his offense." People v. Wingo, 14 Cal. 3d 169, 182 (Cal. 1975) (citations and quotation marks omitted). The Wingo court further explained that, "in the case of a life term convict who the [parole authority] does not believe merits a lesser term it may, and customarily does, act by simply refraining from fixing his term at a span of years. Since by statute he is already serving a life term there is no occasion for the [parole authority] to re-declare the fact." Id. at 183 (citations and quotation marks omitted). Lastly, the court recognized that term-setting was not mandatory, when it referred to the time for filing a habeas petition as being "when such a term is set, or if the Authority within a reasonable time decides not to fix a term." Id. at 184; see also id. at 184 n.16 (rejecting dissent's assertion that the majority opinion is altering the ISL, and stating that the opinion does not affect the discretion vested by law in the parole authority).

<u>Rodriguez</u> does not create an enforceable right to have a term of years set. <u>Rodriguez</u> and <u>Wingo</u> establish that the parole authority has a duty to set a term of years <u>and</u> that the term will be presumed to be the statutory maximum if no term is set. The term-setting is done as a means to the end of doing a cruel and unusual punishment analysis and <u>not</u> as an end to itself. Johnston does not claim that life imprisonment is disproportionate to his particular crime – nor could he seriously claim that life imprisonment for a murder (or his particular murder of his mother by beating her with a baseball bat and strangling her with nylons, <u>see</u> Petitioner's Brief, Exh. B, RT 113) is disproportionate; therefore, no cruel and unusual punishment analysis is done and there is no need for term-setting as a step for such an analysis. His term of imprisonment is presumed to be the statutory maximum of life imprisonment. There is no independent duty to fix a term for Johnston.

Under California law, a life prisoner must first be found suitable for parole before a parole date is set. <u>See</u> <u>In Re Stanworth</u>, 33 Cal. 3d 176, 183 (Cal. 1982). Where, as here, the life prisoner has not been found suitable for parole, there is no obligation to set a parole release date. <u>See generally</u> <u>In re Dannenberg</u>, 34 Cal. 4th 1061, 1070-71 (Cal.), <u>cert. denied</u>, 546 U.S. 844 (2005); 15 Cal. Code Regs. § 2403(a) ("[t]he panel shall set a base term for each life prisoner who is found suitable for parole"). The parole authority has not reached to point where it needs to fix a term and set a parole release date because Johnston has not been found suitable for parole.

All three of Johnston's federal constitutional claims fail because the claimed right to have a term of years set does not exist and he is not a DSL prisoner. His due process claim fails because it is based on the erroneous premise that he has a maximum DSL release date. There is no state-created liberty interest in having a term of years set for a prisoner serving an indeterminate life term for murder who has not been found suitable for parole. Johnston's Eighth Amendment claim fails because his maximum term is life, and prison officials are not on the verge of keeping him in custody past that maximum term. His equal protection claim fails because he is not similarly situated to persons with set DSL release dates. Each of the

federal constitutional claims in the petition is patently meritless. There is no reason to grant leave to amend; the erroneous legal reasoning offered by Johnston is not something that can be cured by amendment.

## CONCLUSION

For the foregoing reasons, the petition is dismissed for failure to state a claim upon which relief may be granted. The in forma pauperis application is DENIED. (Docket # 2.) Petitioner had funds to and did pay the filing fee. The clerk shall close the file.

IT IS SO ORDERED.

DATED: June 5, 2009

Marilyn Hall Patel
United States District Judge